Clendenning v. Perrine.

| 32 | 155 |
|----|-----|
| 46 | 600 |

J. H. CLENDENNING ET AL., APPELLANTS, V. HENRY PERRINE, APPELLEE.

[FILED JUNE 29, 1891.]

1. **Assignment for Creditors:** THE INSTRUMENT set out at length in the opinion construed to be a deed of assignment.

2. ———: CLAIMS: LIMITATIONS.  A creditor of an assignor who through his own fault, fails to present his claim against the estate within the time limited therefor by law, is barred from participation in any dividends or distribution of the estate of the assignor.

3. ———: ———: IRREGULAR PAYMENT: ERROR CURED.  Claims against an assigned estate should be paid by the assignee only on direction of the court; but where claims have been paid without a dividend being declared, and the account of the assignee, which includes such payments, is approved by the court, the error is cured.

APPEAL from the district court for Cuming county. Heard below before KINKAID, J.

*Uriah Bruner*, and *T. M. Franse*, for appellants, cited : *Hurley v. Estes*, 6 Neb., 386; *Flagg v. Mann*, 2 Sumner [U. S.], 533; *Page v. Foster*, 7 N. H., 394.

*M. McLaughlin*, and *C. C. McNish*, *contra*, cited: *Littlejohn v. Turner*, 40 N. W. Rep. [Wis.], 621; *McKindley v. Nourse*, 40 N. W. Rep. [Ia.], 750; *Conlee Lumber Co. v. Meyer*, 38 Id., 117; *Wilson v. Moore*, 13 Neb., 240.

NORVAL, J.

On the 26th day of June, 1882, William T. Clendenning, of Wisner, assigned all his property to the appellee, Henry Perrine, for the benefit of all his creditors. The assignee gave bond, took possession of the property, and converted the same into money. The assignee gave due and legal notice of his appointment as assignee on July 22, 1882, and the creditors of the assignor were notified to file their claims with the assignee within six months from said date. Numerous claims were filed with the assignee within the statutory time, some of which were paid in full, some fifty per cent of their claims, and others twenty-five per cent, and many not anything. The assignee made a report of his doings to the district court, to which exceptions were filed by the appellants. On the 29th day of May, 1886, the district court of Cuming county, in accordance with the provisions of the statute in force at the time of the making of the assignment, appointed a referee to audit, adjust, and restate the account of the assignee, and make report thereof to the court.

The referee reported that the assignee received from the sale of the property $3,061.04; that he had paid on claims against the estate $1,122.36, and the further sum of $437.15 as expenses incurred in conducting the assigned estate, and that the sum of $1,501.50 is in the assignee's hands unaccounted for. The report also states that the sum of

$492.01 remains unpaid on unallowed claims; that C. C. McNish and M. McLaughlin are entitled to $400 as compensation for legal services rendered the estate; and that a balance of $609.50 will remain in the hands of the assignee after discharging all liabilities of the assigned estate, except the compensation of the assignee.

The referee reported that the claims of the appellants were not filed within the time required by law, hence cannot be allowed as valid claims against the assigned estate.

Exceptions to the report of the referee were filed by the appellants, and upon the hearing the district court overruled the exceptions, and approved the report in all respects, except that the assignee was charged with the sum of $133, being the value of certain assigned property appropriated by the assignor. The compensation of the assignee was fixed at $300, and the referee was allowed $100.

The two principal questions raised by this appeal are, First, whether the deed of the assignor conveying the property to the appellee is a deed of assignment; and, second, whether the claims of the appellants should have been allowed.

The following is a copy of the deed:

"This indenture, made this 26th day of June, 1882, between W. T. Clendenning, party of the first part, and H. Perrine, party of the second part, witnesseth : That for the purpose of *securing* all my creditors, I, the said party of the first part, hereby voluntarily set over, assign, and transfer to H. Perrine, the said second party, the entire stock of goods, consisting of a general stock of merchandise, also lot 12, block 35, with the appurtenances thereunto belonging, and a grain warehouse near railroad track, all of said property being situate in Wisner, Cuming county, Nebraska, and I hereby authorize said assignee to take such steps for the sale and disposition of said stock, consisting of dry goods, notions, boots, shoes, hats and caps, groceries,

warehouse, etc., etc., as he may deem proper, together with all books of account, notes, and every other evidence of indebtedness therefor, from time to time, and make settlement in such way and manner as is provided by law, and to this end possession of said stock of goods and lot and store building, also warehouse, is hereby given my said assignee, and the books and notes transferred for the purpose of executing this trust and payment of all of my said creditors as fast as possible, regard being had at all times for the best interest of all parties concerned.

"In witness whereof, I have hereunto set my hand this 26th day of June, 1882.

"(Signed)        W. T. Clendenning."

The deed was duly witnessed, acknowledged, and recorded.

It is claimed by counsel for appellants that the instrument is nothing more than a mortgage, and can be enforced only by foreclosure proceedings. We think counsel are in error. By the instrument the assignor conveys the property therein described to the appellee in trust, for the purpose of paying all the grantor's creditors, with power to sell and dispose of the property and apply the proceeds in payment of debts. In the conveyance the grantor designates the party of the first part, H. Perrine, as "my said assignee." While the instrument might have been more explicit, it is in effect a deed of assignment for the benefit of all the creditors of the assignor, and must be enforced as such.

Complaint is made to the rejection of the claims of appellants. The appellants reside in the state of Virginia, and are relatives of the assignor. It appears that the appellants stipulated with the assignor, in December, 1882, to compromise their claims, whereby they were to receive twenty-five per cent of their claims from the assigned estate, and the assignor was to give them this note for an additional amount in full settlement. The agreement was

.reduced to writing, and statements of the appellant's claims against the estate were made out and delivered to W. T. Clendenning, the assignor, to be filed with the assignee. The testimony of W. T. Clendenning is to the effect that in December, 1882, and not later than the 15th of the month, he handed these statements to the assignee .for filing and allowance.    The assignee testified positively that no statements of appellant's claims were presented to him at any time, and that he never saw any such statements until the day of the hearing before the referee, which was in July, 1886.    This is the substance of all the testimony relating to the filing of these claims.    If the statements and contract of settlement introduced by the appellants on the hearing are the identical ones which were handed to the assignor to have filed, as appellants claim, it is indeed strange how they again came into their possession.    No explanation is attempted in the testimony.    To our mind it is exceedingly doubtful whether the claims were presented by the assignor to the assignee before the time of the hearing, which was more than four years after the date of the assignment.    It devolved upon the appellants to establish by a preponderance of the evidence, not only that their claims were valid debts against the assignor, but that they were duly presented to the assignee for audit and allowance.    This we think they failed to do.

Section 4 of an act " Relating to assignments for the benefit of creditors, and to assignees therein named, and the settlement of their accounts," approved February 19, 1877, provides that within six months after the assignee has given notice of his appointment the creditors of the assignor shall file with the assignee a statement of his claim against the assignor, and on failure to file such statement, such claimant shall be barred from participation in any dividends or distribution of the estate of the assignor. This act was in force when this assignment was executed. Doubtless when a creditor of an assignor, without any

laches on his part, is prevented from filing his claim within the time limited therefor, he may afterwards present it for allowance and participate with the other creditors in distribution of the assets unadministered. It is obvious that these appellants have not brought themselves within such equitable rule. There is no pretense that they did not know of the assignment in ample time to have presented their claims. In fact, they admit knowledge, and placed the claims in the hands of the assignor to be handed to the assignee for filing. The assignor's neglect to do so is the neglect of the appellants, his principals.

Some complaint is made as to the payment by the assignee of $165 to McNish and Graham without any claim therefor being filed. It appears that this debt was secured by a mortgage on a warehouse belonging to the estate. The house was sold, the mortgage paid off, and the balance of the money the assignee is charged with. We see no objection to this. It is not claimed that the mortgage was not a valid lien for the amount paid. The mortgagees were not compelled to file their claim against the estate, but could rely solely upon the property covered by the mortgage, if they so desired.

Through the instrumentality of the assignor, many of the claims filed were compromised at from twenty to fifty cents on the dollar. Such appears to have been paid by the assignee without any dividend being declared by the court. The assignee should pay claims only when ordered by the court. But in this case, the court having approved the report of the referee auditing the account of the assignee, including the payment of claims, it will be treated as conclusive upon that point. Creditors who did not choose to compromise their claims were not so fortunate as those who did, in getting their money. This was unfair and unjust to them, but the appellants have no right to complain. The purpose of the assignment law is to secure a speedy and equitable division of the property

of the debtor among his creditors, and without great expense.    So far as this case is concerned, the aim and purpose of the legislature in enacting the law has not been attained.    Over nine years ago the assignment was made and the estate is yet unsettled.    The expenses of administering the estate, including assignee and attorney's fees, exceed $1,200, or more than one-third of the value of the assigned estate.    Creditors whose claims have been allowed have been kept out of the money justly due them, and much of the estate has been wasted in fruitless litigation. With reference to the objection of the appellants to the item of $400 allowed as attorneys' fees, we will state that while the sum seems to be large it is sustained by the evidence.    The amount is not so unreasonable, considering the additional labor performed by reason of this appeal. This allowance, as well as the compensation of the assignee fixed by the lower court, should, we think, be considered in full.

The report of the referee, as modified by the district court, shows that there will be $742.50 in the hands of the assignee after all liabilities of the estate are paid, including the $400 attorneys' fees, but exclusive of the compensation of the referee $100 and the assignee $300.    After paying these there will be in the hands of the assignee $342.50.

In order that there may be no further delay in settling the estate, the appellee is ordered, without delay, to pay all unpaid claims against the estate, as audited by the referee, taking receipts therefor, and file the same with the clerk of the district court, and make final report to said court at the next term thereof.    The judgment is

AFFIRMED.

THE other judges concur.